IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENZOLYTICS, INC., ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | |
| v. ) | Civil Action No. 21-1599-RGA |
| ) | |
| CIMARRON CAPITAL, LTD., ) | |
| ) | |
| Defendant/Counterclaim Plaintiff. ) | |

**REPORT AND RECOMMENDATION**

**I.  INTRODUCTION**

Presently before the court in this declaratory judgment action arising from the parties' contractual obligations is Enzolytics, Inc.'s ("ENZC" or "Counterclaim Defendant") Motion to Dismiss ("Motion"), (D.I. 26), Cimarron Capital, Ltd.'s ("Cimarron" or "Counterclaim Plaintiff") First Amended Counterclaim ("FACC") alleging breach of contract. (D.I. 25).[1] For the following reasons, I recommend GRANTING ENZC's Motion.

**II.  BACKGROUND**

This action arises out of Cimarron's allegations that ENZC is in breach of two separate debentures. On November 3, 2009, and January 11, 2010, Cimarron entered into two debentures with an entity known as Extreme Mobile Coatings Worldwide Corp. ("Extreme Mobile") which Cimarron alleges is ENZC's predecessor in interest. (D.I. 25 at ¶¶ 1, 6, 30, 36; *see* D.I. 15 Exs. 1–2) Under the first debenture, Extreme Mobile received from Cimarron $100,000.00 at an 8% annual interest rate from Cimarron. (D.I. 25 at ¶ 31; *see* D.I. 15, Ex. 1 at 1) In return, Extreme

---

[1] The briefing for the Motion is as follows: Counterclaim Defendant's opening brief (D.I. 27), Counterclaim Plaintiff's answering brief (D.I. 29), and Counterclaim Defendant's reply brief (D.I. 31).

Mobile promised to pay the required principal and interest. (*Id.*) The second debenture followed the same format and contained identical language, except that Cimarron provided Extreme Mobile with $50,000.00 at an 8% annual interest rate. (D.I. 25 at ¶ 37; *see* D.I. 15, Ex. 2 at 1)

Additionally, under the terms of each debenture, Cimarron possessed the option to convert the debentures into shares of common stock rather than demand payment. (D.I. 25 at ¶¶ 32, 38; D.I. 15, Exs. 1–2 at 1) Neither debenture imposed any time limitations on Cimarron's ability to convert the debentures, providing Cimarron with full discretion on whether, and when, it chose to exercise this right. (D.I. 25 at ¶¶ 33, 39; D.I. 15, Exs. 1–2, at ¶ 2) Both debentures are governed by New York law. (*Id.* at ¶ 14)

On November 14 and 15, 2020, Cimarron alleges it communicated with Billy V. Ray ("Ray"), an "officer" of ENZC, about its intention to convert the debentures into shares of common stock. (D.I. 25 at ¶¶ 7, 57–58) On November 15, 2020, Ray responded with an email telling Cimarron that ENZC needed an opinion letter prior to any conversion and that ENZC would not initiate any conversions before November 26, 2020. (*Id.* at ¶ 60) Cimarron claims ENZC failed to issue the shares of common stock, thus breaching the contract. (*Id.* at ¶¶ 68, 72) Cimarron alleges that had the debentures been converted, it would have received 30,000,000 shares of ENZC. (*Id.* at ¶ 75)

Cimarron claims that on or about November 19, 2020, a merger occurred wherein ENZC issued shares of common stock on favorable terms to other entities upon conversion of their debentures, without providing notice to Cimarron. (*Id.* at ¶¶ 42–43, 61–63, 67, 71) Cimarron contends that the intended purpose of the merger was to defraud certain stakeholders, such as Cimarron. (*Id.* at ¶¶ 47, 64)

2

In its Declaratory Judgment Complaint in this action, ENZC asserts that it was not a party to either debenture, is not the successor to Extreme Mobile, and has not assumed the liabilities of the debentures. (*See e.g.*, D.I. 1 at ¶¶ 12, 20, 27, 31, 33) ENZC alleges that Extreme Mobile is a predecessor to ENZC Sub, Inc. (*Id.* at ¶ 13) ENZC is the publicly traded parent of ENZC Sub, Inc., its wholly owned subsidiary.[2] (*Id.* at ¶¶ 26, 32)

Cimarron continues to assert that ENZC is in breach of the debentures. (*Id.* at ¶¶ 60–61) On November 12, 2021, ENZC instituted this Declaratory Judgment action. (D.I. 1) Cimarron responded with its Answer and Counterclaim on March 4, 2022. (D.I. 12) On April 18, 2022, Cimarron filed the FACC, the operative pleading at issue in this Motion. (D.I. 25) ENZC moved to dismiss the FACC on May 6, 2022. (D.I. 26) This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because ENZC is a Delaware corporation and Cimarron is a Nevada corporation with its principal place of business in Boca Raton, Florida. (D.I. 1 at ¶¶ 2–3; D.I. 25 at ¶ 2)

## III.   LEGAL STANDARD

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to

---

[2] The issue of whether ENZC is contractually obligated for the debentures is not before the court in the pending Motion which only concerns whether the allegations in the FACC are facially plausible.

3

relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV.  DISCUSSION

Under New York law, "[t]he essential elements for pleading . . . breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach." *Dee v. Rakower*, 112 A.D.3d 204, 208–09 (N.Y. App. Div. 2013). In support of its Motion, ENZC makes three arguments: (1) Cimarron failed to plead sufficient facts showing ENZC was obligated under section 9(d)(i) of the debentures to provide Cimarron notice prior to the merger, (2) Cimarron failed to allege that it satisfied the notice requirement in sections 4 and 12 of the

debentures, a condition precedent to Cimarron's right to convert, and (3) the FACC is redundant of the Declaratory Judgment Complaint. (D.I. 27 at 4–9)

### A. Cimarron Fails to Plausibly Allege ENZC Was Obligated to Provide Notice

ENZC argues that Cimarron failed to plead facts suggesting ENZC had a contractual duty to provide notice of the merger. (*Id.* at 4–6) Specifically, ENZC asserts that Cimarron's FACC contains no factual assertions that ENZC took an action as described in section 9(d)(i) which required adjustment of the Conversion Price of the debentures, triggering the notice requirement. (*Id.* at 5) ENZC further argues that Cimarron fails to plead that notice of the merger is not excused. (*Id.*)

> Section 9(d)(i) in each of the debentures plainly states:
>
> If at any time the Company shall take any action which would require an adjustment of the Conversion Price, including, but not limited to . . . (C) there shall be any capital reorganization or reclassification of the capital stock of the Company, or a consolidation or merger of the Company with another corporation (*other than a merger in which the Company is the continuing corporation*, and which does not result in any reclassification or change of the then outstanding common stock or other capital stock issuable upon exercise of the Convertible Debenture, other than a change in par value or subdivision or combination of such shares) . . . then . . . the Company shall cause to be mailed to each of the holders of outstanding Convertible Debenture, at the earliest practicable time (and in any event not less than 20 days before any record date or other date set for definitive action), written notice of the date on which the books of the Company shall close or a record shall be taken for such dividend, distribution of, grant of subscription rights, or such winding up shall take place, as the case may be.

(D.I. 15, Exs. 1–2) (emphasis added)

Section 9(d)(i) of the debentures specifically excludes notice when the company is a continuing corporation. The FACC is silent on whether Cimarron contends ENZC is not the continuing company following the merger and, thus, would not be excused from the notice requirement. Cimarron does not allege that the company ceased to exist after the merger and

5

makes no effort to address this argument in its answering brief, focusing instead on conclusory allegations that ENZC reclassified or changed the outstanding common stock.

Cimarron argues it sufficiently alleged ENZC breached section 9(d)(i) because the merger allegedly was an action that required an adjustment of the Conversion Price under that section. (D.I. 29 at 7) When it makes this argument in its answering brief, Cimarron cites to paragraphs 75–76 of the FACC. (*Id.*) However, no such language is contained in those paragraphs.[3] The FACC alleges only the fact that a merger occurred and that notice to Cimarron was required under section 9(d)(i). (D.I. 25 at ¶¶ 42, 64, 67, 71) Nowhere in the FACC are there any facts about the merger or ENZC's role in it nor what action required an adjustment of the Conversion Price under section 9(d)(i).

Further, Cimarron relies on material outside of the FACC, for example, that ENZC operates under a "veil of secrecy" and that Cimarron served a books and records request, pursuant to 8 *Del. C.* § 220, to obtain documents about the merger. (D.I. 29 at 7; *see also id.*, Ex. A) Cimarron argues its allegations in the FACC are enough at this stage given its scant information about the merger and speculates that future discovery will support its claim for breach of contract. (D.I. 29 at 7)

The court will not consider Cimarron's arguments in its answering brief that do not appear in its pleading. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1998) ("[T]he complaint may not be amended by the briefs in opposition to a motion to dismiss."). Moreover, the pleading cannot survive dismissal based on speculation that future

---

[3] The cited paragraphs state the following: "If the Cimarron Debentures had been properly converted, Cimarron would have received 30,000,000 shares of Enzolytics." (D.I. 25 at ¶ 75) "On or about November 30, 2020, the value of Enzolytics' common stock was approximately $0.11 per share." (*Id.* at ¶ 76)

discovery about the merger will save the claim that ENZC breached the notice requirement in section 9(d)(i) of the debentures.

### B. Cimarron's New Theory of Equitable Estoppel Has Not Been Plausibly Pled

Cimarron alleges ENZC breached section 13 of the debentures when it failed to issue shares of ENZC's successor company. (D.I. 25 at ¶¶ 68, 72) Section 13 states:

> The amount due under this Convertible Debenture, and any and all shares shall follow and become the obligation of any successor company in which the Maker is sold to, merged with or any other combination, including a swap of shares, totaling more than 50% of the issued and outstanding shares of the Maker.

(D.I. 15, Exs. 1–2)

ENZC argues that the FACC fails to state a claim that ENZC breached an obligation to issue shares pursuant to section 13 because Cimarron failed to satisfy the condition precedent of providing written notice as required in sections 4 and 12 of the debentures. (D.I. 27 at 6–7) Section 4 provides:

> Upon presentation and surrender of this Convertible Debenture, with a Written Notice of Conversion duly executed, at the principal office of the Company, or any successor principal office of the company, addressed to the CEO of the Company, the Company shall deliver to [Cimarron], as promptly as practicable, certificates representing the Conversion Shares being purchased.

(D.I. 15, Exs. 1–2) Section 12 states:

> All notices required by this Convertible Debenture to be given or made by the Company shall be given or made by first class mail, postage prepaid, addressed to the registered holder hereof at the address of such holder as shown on the books of the Company.

(*Id.*)

Under New York law, "[i]t is well settled that no action for breach of contract lies where the party seeking to enforce the contract has failed to perform a specified condition precedent." *Carr v. Birnbaum*, 75 A.D.3d 972, 973 (N.Y. App. Div. 2010).

7

In its answering brief, Cimarron fails to address the written notice requirement for conversion in sections 4 and 12 of the debentures nor does the FACC plead any facts suggesting Cimarron complied with the notice requirement. (*See* D.I. 29; D.I. 25) Instead, Cimarron argues for the first time that ENZC should be estopped from raising lack of notice as a defense for not converting the debentures because Cimarron detrimentally relied on Ray's representation that ENZC was not initiating any conversions until November 26, 2020, at the earliest. (D.I. 29 at 7–9)

ENZC argues Cimarron has insufficiently pled the elements of equitable estoppel because there is nothing in the FACC alleging that Ray had apparent authority to bind ENZC or that Cimarron reasonably relied on Ray's representations to its detriment. (D.I. 31 at 3–5)

To establish an equitable estoppel claim under New York law, the party to be estopped must (1) have made a false representation or concealed material facts; (2) had the intention that this misrepresentation would be acted upon by the other party; and (3) have knowledge of the real facts. *Rich v. Orlando*, 128 A.D.3d 1330, 1331 (N.Y. App. Div. 2015). Further, the party asserting estoppel must show: "(1) lack of knowledge of the true facts; (2) good faith reliance; and (3) a change of position." *Id. See also Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Management, L.P.*, 850 N.E.2d 653, 659 (N.Y. 2006) (discussing the purpose of the doctrine is to prevent injustice to a party who justifiably relied upon another's words or conduct to their disadvantage).

Cimarron argues that ENZC "strung Cimarron along until the [m]erger" occurring sometime around November 19, 2020, in order to avoid its contractual obligations under the debentures. (D.I. 29 at 2) In its FACC, Cimarron alleges it had various email communications with Ray in which Cimarron expressed its intention to convert the debentures, but Ray

8

purposefully stalled for time such as by putting off the conversion due to his "situation" and by requiring Cimarron to provide an opinion letter. (D.I. 25 at ¶¶ 57–60)[4] In one of the emails, Cimarron alleges Ray indicated ENZC "would not be initiating any conversions until November 26 at the earliest." (*Id.* at ¶ 60)

Even if the court considers the full content of the emails, they are not sufficient to plead the equitable estoppel theory Cimarron now asserts. The FACC fails to allege any facts supporting the elements of equitable estoppel nor does the FACC even mention the phrase. Cimarron's attempt to supply the details in its answering brief falls short of its obligation to include the elements of equitable estoppel in a facially plausible pleading. *See Pa. ex rel. Zimmerman*, 836 F.2d at 181; *see also* Fed. R. Civ. P. 8.

Cimarron argues it has adequately pled good faith reliance on Ray's representations because Ray had apparent authority as director or officer of ENZC. (D.I. 29 at 8) Cimarron's argument that Ray's title imbues him with authority is unsupported. The only allegation in the FACC is that Ray is "an individual and an officer of [ENZC]." (D.I. 25 at ¶ 7) There is nothing further alleged about his apparent authority or Cimarron's reliance on it for an equitable estoppel claim.

Thus, even when construing the FACC in the light most favorable to Cimarron, the FACC cannot survive dismissal based on an equitable estoppel theory raised for the first time in Cimarron's answering brief. *See Abercrombie v. Andrew College*, 438 F. Supp. 2d. 243, 265–68

---

[4] The FACC references the content of the emails in paragraphs 57–60 but does not attach them to the pleading. The two emails in issue (one of which is redacted) are incorporated into Cimarron's answering brief. (*See* D.I. 29 at 3–4) ENZC objects to their consideration. (D.I. 31 at 1–2) But the court finds they are integral to the FACC and may be considered with the pleading for purposes of the pending Motion. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (noting a court may consider "document[s] integral to or explicitly relied upon in the complaint" without converting the motion into one for summary judgment).

9

(S.D.N.Y. 2006) (dismissing the plaintiff's claims relying on the doctrine of equitable estoppel because the plaintiff failed to adequately plead the elements); *Anderson Co. v. Devine*, 202 A.D.2d 382, 382 (N.Y. App. Div. 1994) (affirming an order granting the defendant's motion to dismiss because the plaintiffs failed to assert equitable estoppel in their complaint).

### C. ENZC's Redundancy Argument is Rendered Moot

Finally, ENZC argues that the court should dismiss Cimarron's FACC because it is redundant of ENZC's Declaratory Judgment Complaint. (D.I. 27 at 7–9) Cimarron contends that its pleading is not redundant because the FACC does not seek a declaratory judgment but alleges a cause of action for breach of contract. (D.I. 29 at 9–10)

ENZC correctly identifies the mirror image legal standard that the court applies when resolving a motion to dismiss a redundant counterclaim. (D.I. 27 at 8) *See Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*, No. 20-cv-01535-RGA, 2021 WL 3794829 (D. Del. Aug. 26, 2021). Without citing to any case authorities to support its position, Cimarron argues that its counterclaim is not redundant because it relies on different facts than ENZC and seeks a different remedy, i.e., money damages and not declaratory relief. (D.I. 29 at 9–10) ENZC has not refuted Cimarron's argument that its demand for money damages distinguishes the breach of contract claim from the Declaratory Judgment action. (*See* D.I. 31 at 5–6)

The court finds it unnecessary to address the redundancy argument because it has recommended dismissal of the FACC based on the pleading defects discussed, *supra*.

Alternatively, Cimarron requests leave to amend its pleading a second time. (D.I. 29 at 10) ENZC has not addressed Cimarron's request and the court finds amendment would not be futile. *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d at 1434 ("leave to amend shall be freely given" unless amendment is futile). Therefore, the court grants leave to amend. The

amended pleading shall be served no later than seven (7) days following the deadline for Objections pursuant to Fed. R. Civ. P. 72(b) or upon further Order of the court following a ruling on Objections, if any.

## V. CONCLUSION

For the foregoing reasons, I recommend GRANTING ENZC's Motion to Dismiss. (D.I. 26) I also recommend GRANTING Cimarron's leave to amend its counterclaim. (D.I. 29 at 10)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 6, 2023

Sherry R. Fallon
United States Magistrate Judge