# Garibian Declaration
# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **ENZOLYTICS, INC.,** | : | **C.A. NO. 1:21-CV-01600-RGA** |
| | : | |
| Plaintiff, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KONA CONCEPTS, INC.** | : | |
| | : | |
| Defendant. | : | |

**RESPONSES OF ENZOLYTICS, INC. TO FIRST SET OF INTERROGATORIES OF
KONA CONCEPTS, INC.**

Enzolytics, Inc. ("ENZC" or "Responding Party"), by and through counsel, Garibian Law

Offices, P.C., hereby responds to the interrogatories of Kona Concepts, Inc. ("Kona" or

"Requesting Party").  As ENZC's investigation is continuing, these responses will be

supplemented as additional information becomes available.  At this time, ENZC responds as

follows:

**PRELIMINARY STATEMENT**

1.      Responding Party's investigation and development of all facts and circumstances
relating to this action is ongoing. These responses and objections are made without prejudice to,
and are not a waiver of, Responding Party's right to rely on other facts or documents at trial.

2.      By making the accompanying responses and objections, Responding Party does
not waive, and hereby expressly reserves the right to assert any and all objections as to the
admissibility of such responses into evidence in this action, or in any other proceedings, on any
and all grounds including, but not limited to, competency, relevancy, materiality, and privilege.
Further, Responding Party makes the responses and objections herein without in any way
implying that Responding Party considers the requests and responses to be relevant or material to
the subject matter of this action.

3.      A response to a discovery request stating that objections and/or indicating that
documents will be produced shall not be deemed or construed that there are, in fact, responsive
documents, that Responding Party performed any of the acts described in the request, or that
definitions and/or instructions applicable to the request, or that Responding Party acquiesces in

GARIBDECL A - 2

the characterization of the conduct or activities contained in the request, or definitions and/or instructions applicable to the request.

4.      Responding Party expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

5.      Responding Party will make available for inspection at its attorneys' offices responsive documents. Alternatively, Responding Party will produce copies of the documents.

6.      Publicly available documents will not be produced.

## <u>GENERAL OBJECTIONS</u>

1.      Responding Party objects to each request to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure.

2.      Responding Party also responds to the requests solely on behalf of itself and objects to the requests to the extent that they request that Responding Party provide information on behalf of entities and individuals other than Responding Party and not within the control of Responding Party.

3.      Responding Party objects to each request that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

4.      Responding Party objects to each request to the extent that it calls for production of internal documents of Responding Party, or documents or information equally accessible to Requesting Party.

5.      Responding Party objects to each request to the extent that it seeks documents or information protected from disclosure by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege. Should any such disclosure by Responding Party occur, it is inadvertent and shall not constitute a waiver of any privilege.

6.      Responding Party objects to each instruction, definition, and request as overbroad and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to the propounding party from the propounding party's own files, from documents or information in Requesting Party's possession, or from documents or information that Responding Party has previously produced to Requesting Party.  Responding to such requests would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such requests is substantially the same or less for Requesting Party as for Responding Party.

7.      To the extent any of the requests seek documents or answers that include expert material, Responding Party objects to any such requests as premature and expressly reserves the right to supplement, clarify, revise, or correct any or all responses to such requests, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports that has been or that will be set by the Court.

8.      Responding Party incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Responding Party does not waive and expressly reserve the right to amend these responses.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

1.      Please describe in detail the position, involvement, scope of responsibility, the date of initial employment relationship, business relationship or personal relationship, any present involvement with You, and, if none, the date Your relationship ceased and the factual circumstances under which that cessation occurred, including but not limited to any compensation or any other benefit or form of income for each of the following persons and/or entities:

a.  Apolant;

b.  Austin;

c.  Camelot;

d.  Divilio;

e.  Ficarra;

f.  Hicks;

g.  Livingston;

h.  Pergola;

i.  Ray;

j.  Seacor;

k.  Sky Direct; and

l.  Southridge.

**RESPONSE:**

**With respect to each of the individuals and entities referenced in the interrogatory, except for Billy V. Ray ("Ray"), ENZC objects to the interrogatory as overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence in this action. ENZC also objects to this interrogatory as requesting that ENZC provide information on behalf of entities and individuals other than ENZC and not within the control of ENZC.**

Further answering, ENZC's declaratory judgment action is limited to the issue of whether ENZC owes any obligation to Kona under the Kona Note. Further answering, the relationship between ENZC and any of the individuals or entities referenced in the interrogatory, except for Ray, bears no relevance whatsoever to ENZC's claims in the declaratory judgment action.

Further answering, with respect to Kona's First Amended Counterclaim, ENZC asserts the same objection. Kona's First Amended Counterclaim is limited to the allegation that ENZC breached Sections 2 and 9 of the Kona Note by 1) failing to give Kona notice of the 251(g) transaction and 2) failing to issue Kona shares (the same issue raised in ENZC's declaratory judgment action). ENZC's relationship and the requested information with respect to the entities and individuals referenced in the interrogatory, except for Ray, has no relevance to Kona's First Amended Counterclaim.

With respect to Ray, ENZC objects to the interrogatory in so far as it requests information with respect to ENZC, as not reasonably calculated to lead to the discovery of admissible evidence in this action. Subject to and without waiver of the foregoing objection, ENZC responds herein regarding its understanding of the relationship between Ray and ENZC Sub, Inc. (now known as "Robustomed, Inc."), the entity who is a party to the Kona Note. In November and December 2020, during which time Peter Aiello corresponded with Ray, Ray provided consulting services to ENZC Sub, Inc. through Camelot Nevada Trust, regarding OTC Compliance and preparing financial statements. Further answering, Ray was not an officer or director of ENZC Sub, Inc. Beyond this information, ENZC objects to the balance of any information requested by Kona as not reasonably calculated to lead to the discovery of admissible evidence.

2.      Please describe in detail any and all compensation or any other benefit or form of income You have provided for each of the following persons and/or entities:

   a.  Apolant;

   b.  Austin;

   c.  Camelot;

   d.  Divilio;

   e.  Ficarra;

   f.  Hicks;

   g.  Livingston;

   h.  Pergola;

   i.  Ray;

   j.  Seacor;

   k.  Sky Direct; and

GARIBDECL A - 5

l.  Southridge.

**RESPONSE: The information requested in this interrogatory falls within the scope of Interrogatory No. 1, to which ENZC has already responded and to which ENZC objects. Accordingly, ENZC objects to Interrogatory No. 2 for the same reasons as ENZC objected to Interrogatory No. 1.**

3.  Please identify, in detail, every document that relates in any manner to Your

answers to Interrogatory Nos. 1 and 2.

**RESPONSE: ENZC objects to this interrogatory as overly broad, unduly burdensome, vague and not reasonably calculated to lead to the discovery of admissible evidence. ENZC also objects to this interrogatory as requesting that ENZC provide information on behalf of entities and individuals other than ENZC and not within the control of ENZC. Subject to and without waiver of the foregoing objections, ENZC reserves the right to rely upon any documents provided by any party or third-party in this action to support any aspect of its declaratory judgment action or its defenses to Kona's counterclaims, should the counterclaims survive the pending motion to dismiss.**

GARIBIAN LAW OFFICES, P.C.

/s/ Antranig Garibian
Antranig Garibian, Esq. (DE Bar No. 4962)
1010 N. Bancroft Parkway, Suite 22
Wilmington, DE 19805
(302) 722-6885 – o
ag@garibianlaw.com
*Attorney for Enzolytics, Inc.*

GARIBDECL A - 6

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

ENZOLYTICS, INC.,                           :      **C.A. NO. 1:21-CV-01600-RGA**
                                            :
       Plaintiff,                       :
                                            :
    v.                                      :
                                            :
KONA CONCEPTS, INC.                         :
                                            :
       Defendant.                       :

## VERIFICATION OF INTERROGATORY ANSWERS

    I, Charles S. Cotropia, am the CEO of Enzolytics, Inc. I believe, based on reasonable inquiry, that the foregoing responses are true and correct to the best of my knowledge, information and belief. I verify under penalty of perjury that the foregoing is true and correct.

_____

Charles S. Cotropia, on behalf of Enzolytics, Inc.

Date: _9/2/2022_

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **ENZOLYTICS, INC.,** | : | **C.A. NO. 1:21-CV-01600-RGA** |
| | : | |
| Plaintiff, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KONA CONCEPTS, INC.** | : | |
| | : | |
| Defendant. | : | |

**RESPONSES OF ENZOLYTICS, INC. TO FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS OF KONA CONCEPTS, INC.**

Enzolytics, Inc. ("ENZC" or "Responding Party"), by and through counsel, Garibian Law

Offices, P.C., hereby responds to the First Set of Requests for Production of Documents of Kona

Concepts, Inc. ("Kona" or "Requesting Party"). As ENZC's investigation is continuing, these

responses will be supplemented as additional information becomes available. At this time,

ENZC responds as follows:

**PRELIMINARY STATEMENT**

1. Responding Party's investigation and development of all facts and circumstances
relating to this action is ongoing. These responses and objections are made without prejudice to,
and are not a waiver of, Responding Party's right to rely on other facts or documents at trial.

2. By making the accompanying responses and objections, Responding Party does
not waive, and hereby expressly reserves the right to assert any and all objections as to the
admissibility of such responses into evidence in this action, or in any other proceedings, on any
and all grounds including, but not limited to, competency, relevancy, materiality, and privilege.
Further, Responding Party makes the responses and objections herein without in any way
implying that Responding Party considers the requests and responses to be relevant or material to
the subject matter of this action.

3. A response to a discovery request stating that objections and/or indicating that
documents will be produced shall not be deemed or construed that there are, in fact, responsive
documents, that Responding Party performed any of the acts described in the request, or
definitions and/or instructions applicable to the request, or that Responding Party acquiesces in
the characterization of the conduct or activities contained in the request, or definitions and/or
instructions applicable to the request.

1

GARIBDECL A - 8

4.      Responding Party expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

5.      Responding Party will make available for inspection at its attorneys' offices responsive documents. Alternatively, Responding Party will produce copies of the documents.

6.      Publicly available documents will not be produced.

## GENERAL OBJECTIONS

1.      Responding Party objects to each request to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure.

2.      Responding Party objects to each request that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

3.      Responding Party objects to each request to the extent that it calls for production of internal documents of Responding Party, or documents or information equally accessible to Requesting Party.

4.      Responding Party objects to each request to the extent that it seeks documents or information protected from disclosure by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege. Should any such disclosure by Responding Party occur, it is inadvertent and shall not constitute a waiver of any privilege.

5.      Responding Party objects to each instruction, definition, and request as overbroad and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to the propounding party from the propounding party's own files, from documents or information in Requesting Party's possession, or from documents or information that Responding Party has previously produced to Requesting Party.  Responding to such requests would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such requests is substantially the same or less for Requesting Party as for Responding Party.

6.      To the extent any of the requests seek documents or answers that include expert material, Responding Party objects to any such requests as premature and expressly reserves the right to supplement, clarify, revise, or correct any or all responses to such requests, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports that has been or that will be set by the Court.

7.      Responding Party incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Responding Party does not waive and expressly reserve the right to amend these responses.

GARIBDECL A - 9

## RESPONSES AND OBJECTIONS TO
## FIRST SET OF REQUESTS FOR PRODUCTION

1.      All documents and communications related to the 251(g) Transaction, including all communications made to any person or corporate entity concerning the possibility of the 251(g) Transaction.

**RESPONSE: ENZC objects to this request as overly broad, vague, ambiguous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The request for "all communications made to any person or corporate entity concerning the possibility of the 251(g) Transaction" is patently unreasonable in scope and volume – without any nexus to the material issues in this action. Subject to and without waiver of the foregoing objections, ENZC is producing herewith Exhibit A, which contains a copy of the relevant documents associated with the 251(g) Transaction.**

2.      All documents identified and/or related to any and all answers You provided to Defendant/Counterclaim Plaintiff Kona Concepts, Inc.'s First Set of Interrogatories Directed To Plaintiff/Counterclaim Defendant Enzolytics, Inc.

**RESPONSE: ENZC objects to this request as overly broad, vague, ambiguous, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The request is not phrased in a way that describes what is being requested with reasonable particularity.**

3.      All documents upon which You base Your allegation in paragraph 23 of the Complaint that on "November 16, 2020, the public company which was the successor to Eco-Petroleum (the party to the Kona Note) changed its name to "ENZC Sub, Inc."

**RESPONSE: See Exhibit B hereto.**

4.      All documents upon which You base Your allegation in paragraph 30 of the Complaint that "Cimarron failed to properly tender a Notice of Conversion prior to the 251(g) Transaction."

**RESPONSE: ENZC objects to this request based on the fact that ENZC has not alleged**

GARIBDECL A - 10

in this action that **"Cimarron failed to properly tender a Notice of Conversion prior to the 251(g) Transaction."**

5.      All documents upon which You base Your allegation in paragraph 31 of the Complaint that "as a result of the 251(g) Transaction, all of the assets and liabilities of ENZC Sub, Inc. stayed with ENZC Sub, Inc., which is wholly owned by ENZC.

**RESPONSE: See Exhibit A hereto.**

6.      All documents upon which You base Your allegation in paragraph 38 of the Complaint that "the restrictive legend from any shares cannot be removed by a transfer agent without a valid legal opinion and proper supporting documentation, none of which was produced by Kona on November 14, 2020."

**RESPONSE: See the November 14, 2020 email included in Exhibit C. Regarding the allegation pertaining to the duties of a transfer agent, ENZC intends to rely upon all applicable law, rules, regulations and statutes, including but not limited to Rule 144 of the Securities Act of 1933 (17 CFR § 230.144) ("Rule 144") and the SEC's informal guidance about restrictive legends, which can be found at https://www.sec.gov/fast-answers/answersrestrichtm.html.**

7.      All documents that You intend to use at any deposition in this matter.

**RESPONSE: ENZC intends to rely upon all pleadings and documents produced by any party or third-party in this matter. Discovery in this matter is ongoing, and to the extent ENZC intends to use any documents at any deposition in this matter, ENZC will produce those documents at the appropriate time.**

8.      All documents that You intend to use at trial in this matter, including but not limited to during direct examination, cross-examination, and/or rebuttal.

**RESPONSE: ENZC intends to rely upon all pleadings and documents produced by any party or third-party in this matter. Discovery in this matter is ongoing, and to the extent ENZC intends to use any documents at trial in this matter, ENZC will produce those documents at the appropriate time.**

9.      With respect to any person whom You expect to call as an expert witness to testify at trial in this Action, produce the following documents: (i) the expert's resume or

4

curriculum vitae; (ii) all reports and other documents that show or tend to show the facts,

opinions, or conclusions as to which the expert is expected to testify; (iii) the complete file

of the expert created or generated in connection with this Action; (iv) all documents created

by the expert, including drafts and hand-written notes, that relate in any way to this Action;

(v) all engagement letters or agreements concerning the expert's retention or employment

in connection with this Action; (vi) all articles, books, book chapters, speeches, and other

presentations created by the expert during the past five years that relate in any way to the

opinions or conclusions reached by the expert in connection with this Action; and (vii) all

testimony given by the expert as an expert witness during the past five years.

**RESPONSE:** **ENZC objects to this request to the extent it calls for the production of documents covered by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege. Subject to and without waiver of the foregoing objection, ENZC has not determined or identified its expert witnesses in this matter. Discovery in this matter is ongoing, and to the extent ENZC intends to call any expert witness to testify in this matter, ENZC will produce those documents at the appropriate time.**

**GARIBIAN LAW OFFICES, P.C.**

/s/ Antranig Garibian
Antranig Garibian, Esq. (DE Bar No. 4962)
1010 N. Bancroft Parkway, Suite 22
Wilmington, DE 19805
(302) 722-6885 – o
ag@garibianlaw.com
*Attorney for Enzolytics, Inc.*

5

# **EXHIBIT A**

State of Delaware
Secretary of State
Division of Corporations
Delivered 01:27 PM 11/17/2020
FILED 01:27 PM 11/17/2020
SR 20208424818 - File Number 4166198

## STATE of DELAWARE

## CERTIFICATE of INCORPORATION

## A STOCK CORPORATION

First: The name of this Corporation is Enzolytics Merger Corp.

Second: Its registered office is the State of Delaware is to be located at VCorp Services, LLC, 1013 Centre Road, Suite 403-B, Wilmington, Delaware 19805, County of New Castle. The registered agent in charge thereof is VCorp Services, LLC.

Third: The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

Fourth: The total number of shares that this Corporation is authorized to issue is 3,535,000,000, allocates as follows among these classes and series of stock:

**Common Stock**

One class of stock shall be common stock, $0.0001 par value, of which the Corporation shall have the authority to issue 3,000,000,000 shares.

**Preferred Stock**

The second class of stock shall be preferred stock, $0.0001 par value, of which the Corporation shall have the authority to issue 535,000,000 shares.

The Board of Directors of the Corporation may authorize the issuance from time to time of shares of its stock of any class, whether now or hereafter authorized, or securities convertible into shares of its stock of any class, whether now or hereafter authorized, for such consideration as the Board of Directors may deem advisable, subject to such restrictions or limitation, if any, as may be set forth in the bylaws of the Corporation.

Of the 535,000,000 shares of preferred stock authorized, 60,000,000 shall be designated as Series A Preferred Stock, 465,000,000 shares shall be designated as Series B Preferred Stock, 10,000,000 shares shall be designated as Series C Preferred Stock.

The preferred stock may be issued, from time to time, in one or more series with such designations, preferences, and relative participating, optional, or other special rights and qualifications, limitations or restrictions thereof, as shall be slated in the resolutions adopted by the Board of Directors of the Corporation providing for the issuance of such preferred stock or series thereof, and the Board of Directors is expressly vested with the authority to fix such desigations, preferences and relative participating options or other special rights or qualifications, limitations or restrictions for each series of preferred stock as the Board of Directors deems necessary or advisable, without any action of the shareholders.

Fifth: The name and mailing address of the incorporator are as follows Charles Cotropia, 2000 North Central Expressway, Plano, Texas 75074.

Sixth: Other than the election or removal of directors of the Corporation, any act or transaction by or involving the Corporation that requires for its adoption under the General Corporation Law of the State of Delaware or this Certificate of Incorporation, as may be amended from time to time the approval of the stockholders of the Corporation shall, pursuant to Section 251(g)(7)(i) of the General Corporation Law of the State of Delaware, require, in addition, the approval of the stockholders of the Corporation (or any successor by merger), by the same vote as is required by the General Corporation Law of the State of Delaware and/or this Certificate of Incorporation, as may be amended from time to time.

I, The Undersigned, for the purpose of forming a corporation under the laws of the State of Delaware, do make, file and record this Certificate, and do certify that the facts herein stated are true, and I have accordingly hereunto set my hand on this November 16, 2020.

Charles Cotropia, Incorporator

State of Delaware
Secretary of State
Division of Corporations
Delivered  01:20 PM 11/17/2020
FILED  01:20 PM 11/17/2020
SR 20208424705 - File Number 4658525

# CERTIFICATE OF AMENDMENT OF
# THE CERTIFICATE OF INCORPORATION OF
# ENZOLYTICS, INC.

Enzolytics, Inc. (the "Corporation"), a corporation duly organized and existing under the General Corporation Law of the State of Delaware (the "DGCL"), hereby certifies that:

1. The name of the Corporation is Enzolytics, Inc. The date the Corporation filed its original Certificate of Incorporation with Delaware Secretary of State was February 23, 2009.

2. This Certificate of Amendment shall become effective immediately upon filing.

3. This Certificate of Amendment was duly adopted in accordance with Section 242 of the DGCL. The Board of Directors duly adopted resolutions setting forth and declaring advisable this Certificate of Amendment

4. Upon the filing and effectiveness pursuant to the DGCL of this Certificate of Amendment of the Certificate of Incorporation, as amended, of the Corporation, (the "Charter") Section First of the Charter is hereby amended to read in its entirety as set forth below:

FIRST:  The name of the Corporation shall be ENZC SUB, Inc.

5. The remaining provisions of the Charter are not affected by the aforementioned amendment and remain in full force and are not affected by this Certificate of Amendment.

IN WITNESS WHEREOF, said Corporation has caused this Certificate of Amendment to be signed by Charles Cotropia, on this 16th day of November 2020.

Charles Cotropia
CEO, Authorized Officer

State of Delaware
Secretary of State
Division of Corporations
Delivered 01:22 PM 11/17/2020
FILED 01:22 PM 11/17/2020
SR 20208424746 - File Number 4166070

# STATE of DELAWARE

## CERTIFICATE of INCORPORATION

### A STOCK CORPORATION

First: The name of this Corporation is "Enzolytics, Inc."

Second: Its registered office is the State of Delaware is to be located at VCorp Services, LLC, 1013 Centre Road, Suite 403-B, Wilmington, Delaware 19805, County of New Castle. The registered agent in charge thereof is VCorp Services, LLC.

Third: The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

Fourth: The total number of shares that this Corporation is authorized to issue is 3,535,000,000, allocates as follows among these classes and series of stock:

**Common Stock**

One class of stock shall be common stock, $0.0001 par value, of which the Corporation shall have the authority to issue 3,000,000,000 shares.

**Preferred Stock**

The second class of stock shall be preferred stock, $0.0001 par value, of which the Corporation shall have the authority to issue 535,000,000 shares.

The Board of Directors of the Corporation may authorize the issuance from time to time of shares of its stock of any class, whether now or hereafter authorized, or securities convertible into shares of its stock of any class, whether now or hereafter authorized, for such consideration as the Board of Directors may deem advisable, subject to such restrictions or limitation, if any, as may be set forth in the bylaws of the Corporation.

Of the 535,000,000 shares of preferred stock authorized, 60,000,000 shall be designated as Series A Preferred Stock, 465,000,000 shares shall be designated as Series B Preferred Stock, 10,000,000 shares shall be designated as Series C Preferred Stock.

The preferred stock may be issued, from time to time, in one or more series with such designations, preferences, and relative participating, optional, or other special rights and qualifications, limitations or restrictions thereof, as shall be slated in the resolutions adopted by the Board of Directors of the Corporation providing for the issuance of such preferred stock or series thereof, and the Board of Directors is expressly vested with the authority to fix such desigations, preferences and relative participating options or other special rights and qualifications, limitations or restrictions for each series of preferred stock as the Board of Directors deems necessary or advisable, without any action of the shareholders.

Fifth: The name and mailing address of the incorporator are as follows Charles Cotropia, 2000 North Central Expressway, Plano, Texas 75074.

Sixth: Other than the election or removal of directors of the Corporation, any act or transaction by or involving the Corporation that requires for its adoption under the General Corporation Law of the State of Delaware or this Certificate of Incorporation, as may be amended from time to time the approval of the stockholders of the Corporation shall, pursuant to Section 251(g)(7)(i) of the General Corporation Law of the State of Delaware, require, in addition, the approval of the stockholders of the Corporation (or any successor by merger), by the same vote as is required by the General Corporation Law of the State of Delaware and/or this Certificate of Incorporation, as may be amended from time to time.

I, The Undersigned, for the purpose of forming a corporation under the laws of the State of Delaware, do make, file and record this Certificate, and do certify that the facts herein stated are true, and I have accordingly hereunto set my hand on this November 16, 2020.

Charles Cotropia, Incorporator

State of Delaware
Secretary of State
Division of Corporations
Delivered 04:09 PM 11/19/2020
FILED 04:09 PM 11/19/2020
SR 20208450588 - File Number 4658525

CERTIFICATE OF MERGER
Enzolytics, Inc.,
Enzolytics Merger Corp. and
ENZC SUB, Inc.

Pursuant to Section 251 of the General Corporation Law of the State of Delaware (the "DGCL"), Enzolytics, Inc., a Delaware corporation, in connection with the merger of Enzolytics Merger Corp., a Delaware corporation, with and into ENZC SUB, Inc. (this being hereinafter referred to as the "Merger"), hereby certifies as follows:

FIRST: The names and states of incorporation of the constituent corporations to the Merger are:

| Name | State of Incorporation |
| --- | --- |
| Enzolytics, Inc. | Delaware |
| ENZC SUB, Inc. | Delaware |
| Enzolytics Merger Corp. | Delaware |

SECOND: An Agreement and Plan of Merger, dated as of November 16, 2020, by and among Enzolytics, Inc., ENZC SUB, Inc., and Enzolytics Merger Corp. (the "Merger Agreement"), setting forth the terms and conditions of the Merger, has been approved, adopted, executed and acknowledged by each of the three participants to such Merger Agreement, in accordance with Section 251(g) of the DGCL.

THIRD: The name of the surviving corporation is ENZC SUB, Inc. (the "Surviving Corporation"), with Enzolytics Merger Corp. not surviving, with ENZC SUB, Inc. continuing in existence as the subsidiary of Enzolytics, Inc., the successor issuer.

FOURTH: The Certificate of Incorporation, as may be amended from time to time of the Corporation as in effect immediately prior to the Merger shall be the certificate of incorporation of the Surviving Corporation with the addition of a new Article, which shall be added thereto, reading as follows:

> "Other than the election or removal of directors of the Corporation, any act or transaction by or involving the Corporation that requires for its adoption under the General Corporation Law of the State of Delaware or this Certificate of Incorporation, as may be amended from time to time the approval of the stockholders of the Corporation shall, pursuant to Section 251(g)(7)(i) of the General Corporation Law of the State of Delaware, require, in addition, the approval of the stockholders of the Corporation (or any successor by merger), by the same vote as is required by the General Corporation Law of the State of Delaware and/or this Certificate of Incorporation, as may be amended from time to time."

FIFTH: The Merger shall become effective upon filing.

SIXTH: The executed Merger Agreement is on file at the office of the Surviving Corporation located at 2000 North Central Expressway, Plano, Texas 75074. A copy of the Merger

Agreement will be furnished by the Surviving Corporation, on request and without cost to any stockholder of either corporation.

SEVENTH: Following the Merger and its effectiveness, Enzolytics, Inc. will become the parent corporation to ENZC SUB, Inc. and its sole shareholder, with Enzolytics Merger Corp. ceasing to exist.

IN WITNESS WHEREOF, this Certificate of Merger has been executed on this November 16, 2020.

**Enzolytics, Inc.,**
a Delaware corporation

Name:                    Charles Cotropia, CEO and President

**ENZC SUB, Inc.,**
a Delaware corporation

Name:                    Charles Cotropia, CEO and President

**Enzolytics Merger Corp.,**
a Delaware corporation

Name:                    Charles Cotropia, CEO and President

**ENZOLYTICS, INC.**

**SUPPLEMENTAL REPORT**

**SUBSEQUENT EVENTS**

**NOVEMBER 23, 2020**

Holding Company Reorganization

On November 16, 2020, the issuer (having been renamed, immediately prior to this Holding Company Reorganization, from "Enzolytics, Inc." to "ENZC SUB, Inc.") completed a corporate reorganization (the "Holding Company Reorganization") pursuant to which ENZC SUB, Inc., as previously constituted (the "Predecessor") became a direct, wholly-owned subsidiary of a newly formed Delaware corporation, Enzolytics, Inc. (the "Holding Company"), which became the successor issuer. In other words, the Holding Company is now the public entity. The Holding Company Reorganization was effected by a merger conducted pursuant to Section 251(g) of the Delaware General Corporation Law (the "DGCL"), which provides for the formation of a holding company without a vote of the stockholders of the constituent corporations.

In accordance with Section 251(g) of the DGCL, Enzolytics Merger Corp. ("Merger Sub"), another newly formed Delaware corporation and, prior to the Holding Company Reorganization, an indirect, wholly owned subsidiary of the Predecessor, merged with and into the Predecessor, with the Predecessor surviving the merger as a direct, wholly owned subsidiary of the Holding Company (the "Merger"). The Merger was completed pursuant to the terms of an Agreement and Plan of Merger among the Predecessor, the Holding Company and Merger Sub, dated November 16, 2020 (the "Merger Agreement").

As of the effective time of the Merger and in connection with the Holding Company Reorganization, all outstanding shares of common stock and preferred stock of the Predecessor were automatically converted into identical shares of common stock or preferred stock, as applicable, of the Holding Company on a one-for-one basis, and the Predecessor's existing stockholders and other holders of equity instruments, became stockholders and holders of equity instruments, as applicable, of the Holding Company in the same amounts and percentages as they were in the Predecessor prior to the Holding Company Reorganization.

The executive officers and board of directors of the Holding Company are the same as those of the Predecessor in effect immediately prior to the Holding Company Reorganization.

For purposes of Rule 12g-3(a), the Holding Company is the successor issuer to the Predecessor, now as the sole shareholder of the Predecessor. Accordingly, upon consummation of the Merger, the Holding Company's common stock was deemed to be registered under Section 12(b) of the Securities Exchange Act of 1934, as amended, pursuant to Rule 12g-3(a) promulgated thereunder.

The foregoing description of the Merger Agreement is qualified in its entirety by reference to the full text of the Merger Agreement, a copy of which is attached as an exhibit hereto and incorporated by reference herein.

The Holding Company adopted a certificate of incorporation (the "Certificate") and bylaws (the "Bylaws") that are, in all material respects, identical to the certificate of incorporation and bylaws of the Predecessor immediately prior to the Holding Company Reorganization, with the possible exception of certain amendments that are permissible under Section 251(g)(4) of the DGCL. The Holding Company has the same authorized capital stock and the designations, rights, powers and preferences of such capital stock, and the qualifications, limitations and restrictions thereof are the same as that of the Predecessor's capital stock immediately prior to the Holding Company Reorganization.

The common stock of the Holding Company trades on OTCMarkets.com under the symbol "ENZC" under which the common stock of the Predecessor was previously listed and traded. As a result of the Holding Company Reorganization, the common stock of the Predecessor will no longer be publicly traded.

## AGREEMENT AND PLAN OF MERGER

THIS AGREEMENT AND PLAN OF MERGER (this "Agreement"), dated as of November 16, 2020, is by and among Enzolytics, Inc., a newly formed Delaware corporation (the "Holding Company"), ENZC SUB, Inc. (the "Predecessor" or "ENZC SUB"), having been renamed, immediately prior to this Holding Company Reorganization, from "Enzolytics, Inc." to "ENZC SUB, Inc.," a Delaware corporation and hereby becoming a wholly-owned subsidiary of Holding Company, and Enzolytics Merger Corp. (the "Merger Sub"), a newly formed Delaware corporation and prior to the effectiveness of this Agreement, being a wholly-owned subsidiary of the Predecessor.

## RECITALS

WHEREAS, the purpose of this Agreement, and the transactions contemplated by this Agreement, is to create a new holding company structure and the Holding Company and Merger Sub have been formed for the purpose of effecting this new holding company structure;

WHEREAS, the respective Boards of Directors of Holding Company, ENZC SUB and Merger Sub have each approved and adopted this Agreement and the transactions contemplated by this Agreement, in each case after making a determination that this Agreement and such transactions are advisable and in the best interests of such company and its stockholders;

WHEREAS, at the Effective Time (as defined below), pursuant to the transactions contemplated by this Agreement and on the terms and subject to the conditions set forth herein, Merger Sub will merge with and into the Predecessor in accordance with the Delaware General Corporation Law, as amended (the "DGCL"), whereupon the separate existence of Merger Sub shall cease and ENZC SUB, Inc. surviving and emerging as the subsidiary of Enzolytics, Inc., as the Holding Company and the successor issuer;

WHEREAS, for U.S. federal income tax purposes, it is the intention of the parties hereto that the Merger shall qualify as a tax-free reorganization within the meaning of Section 368 of the Internal Revenue Code of 1986, as amended (the "Code"), and the rules and regulations promulgated thereunder.

NOW, THEREFORE, in consideration of the premises and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

## ARTICLE 1

## MERGER

Section 1.1 *Merger.* Subject to the terms and conditions of this Agreement and in accordance with Section 251(g) of the DGCL, Merger Sub shall be merged with and into the Predecessor at the Effective Time. Following the Effective Time, the separate corporate existence of Merger Sub shall cease, and the Predecessor shall continue as the surviving entity

(sometimes herein referred to as the "Surviving Entity"), becoming a direct wholly-owned subsidiary of the Holding Company, Enzolytics, Inc., which shall also survive and become the publicly traded company, as the successor issuer.

Section 1.2 *Effective Time.*

(a) Subject to the provisions of this Agreement, as soon as practicable following the satisfaction or waiver of the conditions set forth in Section 4.1, the Predecessor shall duly execute and file a Certificate of Merger (the "Certificate of Merger") substantially in the form set forth as Exhibit A hereto with the Secretary of State of the State of Delaware (the "Delaware Secretary") as required by the DGCL. The Merger shall become effective as provided in the Certificate of Merger (the "Effective Time").

(b) The Merger shall have the effects set forth in this Agreement and in the applicable provisions of the DGCL. Without limiting the generality of the foregoing, and subject thereto, at the Effective Time, (i) right and title to all assets (including real estate and other property) owned by, and every contract right possessed by, the Predecessor and Merger Sub shall vest in the Surviving Entity, and (ii) all liabilities and obligations of the Predecessor and Merger Sub shall become the liabilities and obligations of the Surviving Entity. The vesting of such rights, title, liabilities and obligations in the Surviving Entity shall not be deemed to constitute an assignment or an undertaking or attempt to assign such rights, title, liabilities and obligations. Thereafter, the successor issuer and parent corporation shall be and remain "Enzolytics, Inc." and the surviving entity of the merger shall be and remain, "ENZC SUB, Inc.," the Predecessor and wholly-owned subsidiary of the Holding Company.

Section 1.3 *Organizational Documents.*

(a) Each Participant in this Agreement and the Merger. In accordance with Section 251(g) of the DGCL, each participant agrees to cooperate in the filing of an amended and restated certificate of incorporation for each participant (substantially in the form set forth as Exhibit B hereto, with the Delaware Secretary prior to the Effective Time to be effective prior to and as of the Effective Time (without, for the avoidance of doubt, giving effect to any of the amendments contemplated by Section 1.3(b) of this Agreement) containing provisions identical to those in the Certificate of Incorporation, as may be amended from time to time of the Predecessor immediately prior to the Effective Time, except as otherwise permitted by Section 251(g) of the DGCL. Each participant acknowledges that it has adopted bylaws identical, in all material respects, to that of the Predecessor effective prior to and as of the Effective Time.

(b) Surviving Entity.

(i) At the Effective Time, the certificate of incorporation of Holding Company in effect immediately prior to the Effective Time shall be and remain the certificate of incorporation of "Enzolytics, Inc" while ENZC SUB, Inc. shall also survive and become becoming a wholly-owned subsidiary of Holding Company, until otherwise thereafter amended as provided therein or by the DGCL.

(ii) In accordance with Section 251(g) of the DGCL, at the Effective Time, the Holding Company Bylaws shall be amended and restated in the form identical, in all material respects, to

that of the Predecessor and, as so effectuated, shall continue in full force and effect, until otherwise thereafter amended as provided therein or by the DGCL.

Section 1.4 *Directors and Officers of the Surviving Entity.* From and after the Effective Time, the members of the board of directors of Intercontinental Technology and of the Surviving Entity shall be the members of the board of directors of Merger Sub immediately prior to the Effective Time, and the officers of the Surviving Entity shall be the officers of Merger Sub immediately prior to the Effective Time, each to hold office as provided in the Certificate and Bylaws, until their respective successors are duly elected or appointed and qualified or until their earlier death, resignation or removal.

Section 1.5 *Directors and Officers of each participating company.* From and after the Effective Time, the directors of each participating company shall be the same persons, immediately prior to the Effective Time, and immediately thereafter and until their respective successors are duly elected or appointed and qualified or until their earlier death, resignation or removal.

## ARTICLE 2

## CONVERSION OF SECURITIES; STOCK CERTIFICATES

Section 2.1 *Conversion of Securities.* At the Effective Time, by virtue of the Merger and without any action on the part of Intercontinental Technology, ENZC SUB, Merger Sub or any holder of any securities of the foregoing entities:

(a) Each share (or fraction of share, as applicable) of common stock, par value $0.0001 per share, Series A Preferred Stock, Series B Preferred Stock or Series C Preferred Stock, as the case may be of the Predecessor (the "Predecessor Stock"), outstanding or held in treasury immediately prior to the Effective Time, shall be converted into one (or equal fraction of one, as applicable) fully paid and nonassessable share of common stock, par value $0.0001 per share or Series A Preferred Stock, Series B Preferred Stock or Series C Preferred Stock, as the case may be, of Holding Company (the "Enzolytics, Inc. Stock") having the same designations, rights, powers and preferences, and the qualifications, limitations and restrictions thereof, as the corresponding share (or fraction of a share) of the Predecessor Stock being converted in the Merger. Each outstanding right to acquire Predecessor Stock, such as a warrant or an employee stock option, which is fully accrued, matured and without condition precedent (a conversion right in a convertible financial instrument is not defined herein to include such a "right to acquire"), immediately prior to the Effective Time shall be converted into a right to acquire Enzolytics, Inc. Stock on the same terms and conditions as the right to acquire Predecessor Stock being converted in the Merger, to the exclusion of any rights or obligations that may be associated with a convertible financial instrument, which such rights shall remain, intact, with respect to the Predecessor, and the Predecessor shall remain obligated in all respects thereto, including with regard to rights of conversion with respect thereto.

(b) Each share of Enzolytics, Inc. Stock issued and outstanding immediately prior to the Effective Time shall be canceled and retired and shall cease to exist, and no cash or other consideration shall be delivered or deliverable in exchange therefor; and

(c) Each share of Merger Sub common stock, par value $0.0001 per share, held by Holding Company immediately prior to the Effective Time shall automatically convert into 1 share of common stock, par value $0.0001 per share, of the Surviving Entity.

Section 2.2 *Stock Certificates.* Subject to Section 2.1, from and after the Effective Time, all of the outstanding certificates and book-entries which immediately prior to the Effective Time represented shares of ENZC SUB Stock shall be deemed for all purposes to evidence ownership of, and to represent, shares of Holding Company Stock into which the shares of ENZC SUB Stock formerly represented by such certificates and book-entries have been converted as provided in this Agreement with identical designations, rights, powers and preferences, and qualifications, limitations and restrictions. Without the necessity of exchanging or surrendering any such certificates, the registered owner on the books and records of ENZC SUB or its transfer agent of any outstanding stock certificate, unless and until such certificate shall have been surrendered for transfer or otherwise accounted for to Holding Company or its transfer agent, shall be entitled to exercise any voting and other rights with respect to the applicable shares of Intercontinental Technology Stock into which the shares of ENZC SUB Stock have been converted as provided in this Agreement.

## ARTICLE 3

## ACTIONS TO BE TAKEN IN CONNECTION WITH THE MERGER

Section 3.1 *Post-Effective Amendments.* It is the intent of the parties that Holding Company, as of the Effective Time, be deemed a "successor issuer" for purposes of continuing offerings of ENZC SUB under the Securities Act of 1933, as amended (the "Securities Act").

Section 3.2 *Reservation of Shares*. On or prior to the Effective Time, Holding Company will reserve sufficient shares of Holding Company Stock to provide for the issuance of Holding Company Stock to satisfy Holding Company's obligations under this Agreement.

Section 3.3 *Tax Characterization*. Each party hereto shall use its reasonable best efforts to cause the Merger to constitute a tax-free reorganization within the meaning of Section 368 of the Code, and shall not take any actions reasonably likely to cause the Merger not to so qualify, or cause any such actions to be taken.

## ARTICLE 4

## CONDITIONS TO MERGER

Section 4.1 *Conditions Precedent*. The respective obligation of each party to effect the Merger is subject to the satisfaction or waiver of the condition that no order, statute, rule, regulation, executive order, injunction, stay, decree, judgment or restraining order that is in effect shall have been enacted, entered, promulgated or enforced by any court or governmental or regulatory authority or instrumentality which prohibits or makes illegal the consummation of the Merger or the transactions contemplated hereby.

## ARTICLE 5

**TERMINATION AND AMENDMENT**

Section 5.1 *Termination.* This Agreement may be terminated or the completion of the transactions contemplated herein, including without limitation the Merger, may be deferred at any time prior to the Effective Time by action of the Board of Directors of Holding Company, ENZC SUB or Merger Sub. In the event of such termination, this Agreement shall become null and void and have no effect, without any liability or obligation on the part of any such participant, by reason of this Agreement.

Section 5.2 *Amendment.* This Agreement may be amended, modified or supplemented at any time by an instrument in writing signed on behalf of each of the parties.

**ARTICLE 6**

**GENERAL PROVISIONS**

Section 6.1 *Governing Law.* This Agreement shall be governed by and construed and enforced under the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws.

Section 6.2 *Entire Agreement.* This Agreement, including the documents and instruments referred to herein, constitutes the entire agreement and supersedes all other prior agreements and undertakings, both written and oral, among the parties, or any of them, with respect to the subject matter hereof.

Section 6.3 *Further Assurances.* From time to time, and when required by ENZC SUB, Holding Company and/or Merger Sub shall execute and deliver, or cause to be executed and delivered, such deeds and other instruments, and ENZC SUB, Holding Company and/or Merger Sub shall take or cause to be taken such further and other action, as shall be appropriate or necessary in order to vest or perfect in or to conform of record or otherwise in the Surviving Entity or Holding Company, as applicable the title to and possession of all the property, interests, assets, rights, privileges, immunities, powers, franchises and authority of ENZC SUB, Intercontinental Technology and/or Merger Sub and otherwise to carry out the purposes of this Agreement, and the officers and directors of each participant are authorized fully in the name and on behalf of such participant, as applicable, or otherwise to take any and all such actions and to execute and deliver any and all such deeds and other instruments.

Section 6.4 *Counterparts.* This Agreement may be executed in one or more counterparts, and by the different parties in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or other electronic means (including portable document format) shall be as effective as delivery of a manually executed counterpart of this Agreement.

Section 6.5 *Severability.* The provisions of this Agreement are severable, and in the event any provision hereof is determined to be invalid or unenforceable, such invalidity or unenforceability shall not in any way affect the validity or enforceability of the remaining provisions hereof.

Section 6.6 *No Appraisal Rights*. In accordance with the DGCL, no appraisal rights shall be available to any holder of shares of any class of stock whatsoever, in connection with the Merger.

Section 6.7 *Amendments*. At any time prior to the Effective Time, this Agreement may be supplemented, amended or modified, whether before or after the adoption of this Agreement by the sole stockholder of Merger Sub, by the mutual consent of the parties to this Agreement by action by their respective boards of directors; provided, however, that, no amendment shall be effected subsequent to the adoption of this Agreement by the sole stockholder of Merger Sub that by law requires further approval or authorization by the sole stockholder of Merger Sub or the stockholders of the Company without such further approval or authorization. No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by all of the parties hereto.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first written above.


**Enzolytics, Inc.,**
a Delaware corporation

By:        /s/ Charles Cotropia
           Name:        Charles Cotropia
                        CEO and President


**ENZC SUB, Inc.,**
a Delaware corporation

By:        /s/ Charles Cotropia
           Name:        Charles Cotropia
                        CEO and President


**Enzolytics Merger Corp.,**
a Delaware corporation

By:        /s/ Charles Cotropia
           Name:        Charles Cotropia
                        CEO and President

# **<u>EXHIBIT B</u>**

GARIBDECL A - 30

State of Delaware
Secretary of State
Division of Corporations
Delivered  01:20 PM 11/17/2020
FILED  01:20 PM 11/17/2020
SR 20208424705 - File Number 4658525

# CERTIFICATE OF AMENDMENT OF
# THE CERTIFICATE OF INCORPORATION OF
# ENZOLYTICS, INC.

Enzolytics, Inc. (the "Corporation"), a corporation duly organized and existing under the General Corporation Law of the State of Delaware (the "DGCL"), hereby certifies that:

1. The name of the Corporation is Enzolytics, Inc. The date the Corporation filed its original Certificate of Incorporation with Delaware Secretary of State was February 23, 2009.

2. This Certificate of Amendment shall become effective immediately upon filing.

3. This Certificate of Amendment was duly adopted in accordance with Section 242 of the DGCL. The Board of Directors duly adopted resolutions setting forth and declaring advisable this Certificate of Amendment

4. Upon the filing and effectiveness pursuant to the DGCL of this Certificate of Amendment of the Certificate of Incorporation, as amended, of the Corporation, (the "Charter") Section First of the Charter is hereby amended to read in its entirety as set forth below:

FIRST:  The name of the Corporation shall be ENZC SUB, Inc.

5. The remaining provisions of the Charter are not affected by the aforementioned amendment and remain in full force and are not affected by this Certificate of Amendment.

IN WITNESS WHEREOF, said Corporation has caused this Certificate of Amendment to be signed by Charles Cotropia, on this 16th day of November 2020.

Charles Cotropia
CEO, Authorized Officer

**EXHIBIT C**

GARIBDECL A - 33

THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR QUALIFIED UNDER APPLICABLE STATE SECURITIES LAWS AND HAVE BEEN TAKEN FOR INVESTMENT PURPOSES ONLY AND NOT WITH A VIEW TO OR FOR SALE IN CONNECTION WITH ANY DISTRIBUTION THEREOF. THE SECURITIES MAY NOT BE SOLD OR OTHERWISE TRANSFERRED IN THE ABSENCE OF SUCH REGISTRATION AND QUALIFICATION WITHOUT, EXCEPT UNDER CERTAIN SPECIFIC LIMITED CIRCUMSTANCES, AN OPINION OF COUNSEL FOR THE HOLDER THAT SUCH REGISTRATION AND QUALIFICATION ARE NOT REQUIRED.

**Eco-Petroleum Solutions, Inc.,**
(a Delaware corporation)

*And its Subsidiary*

**Immunotech Laboratories, Inc.**
(A Nevada corporation)

.

**12% CONVERTIBLE PROMISSORY NOTE**
**All Terms Conditional on Receipt of $25,000 US BY**
**KONA Concepts Inc**

$ 25,000.00 (US)                  March 9, 2017

1.          Principal and Interest.    **Eco-Petroleum Solutions, Inc.,** a Delaware corporation (the "Company") *And its Subsidiary* **Immunotech Laboratories, Inc.** (A Nevada corporation), for value received, hereby promises to pay to the order of KONA Concepts Inc. (the "Holder") in lawful money of the United States at the address of the Holder set forth below, the principal amount of TWENTY-FIVE THOUSAND Dollars ($25,000.00), together with interest at a rate equal to Twelve Percent (12%) per annum, compounded. The principal and any accrued interest on this Note are due and payable on or before March 9, 2018, the Holder may elect to convert this Note into shares of common stock ("Common Stock") of **Eco-Petroleum Solutions, Inc.,** (the "Company") pursuant to Section 3. Upon payment in full of all principal and interest payable hereunder, or conversion to common stock, this Note shall be surrendered to the Company for cancellation. The Company may prepay this Note at anytime without penalty, subject to the election of the Holder exercising their rights under Section 3.

2.          Security for Note.    The Note shall be secured by the assets as provided in Attachment A, by the Company.

3.          Conversion of Note into Common Stock.    The Note holder (the "Holder") in its sole discretion may elect to convert the Note into shares of the Company's common stock. The Holder may convert the Note, or portion thereof, at a discount to market equal to 50% discount to the lowest closing bid during the past 10 trading days. The Holder's right to convert the Note will be triggered upon the occurrence of any one of the following: (i) 6 months from the date of said

Page 1 of 3

note, (ii) change in control the Company, (iii) the filing of a registration statement or offering, or (iv) election by the Holder. No fractional shares of common stock shall be issued upon conversion of the Note, and in lieu thereof, the number of shares of common stock to be issued for the Note converted shall be rounded down to the nearest whole number of shares of common stock.

3.1 Conversion Limitations.    On conversion of the note to shares by the Company, the Note Holder shall not hold more than 9.9% of the outstanding stock of the Company at any time.

3.2 Authorized Shares. If at the time of conversion pursuant to this Section 2 there are insufficient authorized shares of Common Stock to permit conversion of this Note in full, then the Company shall take all corporate action necessary to authorize a sufficient number of shares to permit such conversion in full.

3.3 Stock Certificate. Upon conversion of this Note, the Holder shall surrender this Note, duly endorsed, at the principal office of the Company. At its expense, the Company shall, as soon as practicable thereafter, issue and deliver to the Holder at such principal office a certificate or certificates, either physically or via DWAC, for the number of shares to which the Holder shall be entitled upon such conversion (bearing such legends as are required by applicable state and federal securities laws and in the opinion of counsel to the Companies).

3.4 Fractional Shares. No fractional shares shall be issued upon conversion of this Note. In lieu of the Company issuing any fractional shares to the Holder upon the conversion of this Note, the Company shall pay to the Holder an amount in cash equal to the product obtained by multiplying the conversion price applied to effect such conversion by the fraction of a share not issued pursuant to the previous sentence. Upon conversion of this Note in full and the payment of the amounts specified in this Note, the Companies shall be released from all its obligations and liabilities under this Note.

4.    Transfers. This Note may be transferred only in compliance with applicable federal and state securities laws and only upon surrender of the original Note for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form satisfactory to the Company. Thereupon, a new promissory note for like principal amount and interest will be issued to, and registered in the name of, the transferee. Interest and principal are payable only to the registered holder of this Note.

5.    Attorneys' Fees. If the indebtedness represented by this Note or any part thereof is collected in bankruptcy, receivership or other judicial proceedings or if this Note is placed in the hands of attorneys for collection after default, the Company agrees to pay, in addition to the principal and interest payable hereunder, reasonable attorneys' fees and costs incurred by the Holder.

6.    Notices. Any notice, other communication or payment required or permitted hereunder shall be in writing and shall be deemed to have been given upon delivery if personally delivered or upon deposit if deposited in the United States mail for mailing by registered or certified mail, postage prepaid, and addressed as follows:

GARIBDECL A - 35

If to the Holder:      KONA Concepts Inc
                       27 Barker Ave. Apt 1004
                       White Plains, NY 10601

If to the Company      **Eco-Petroleum Solutions, Inc.,**
                       **Immunotech Laboratories, Inc.**
                       Harry Zhabilov, CEO
                       120 WPomona Ave.
                       Monrovia, CA 91016

Each of the above addressees may change its address for purposes of this section by giving to the other addressee notice of such new address in conformance with this section.

      7.     Waivers. The Company hereby waives presentment, demand for performance, notice of non-performance, protest, notice of protest and notice of dishonor. No delay on the part of the Holder in exercising any right hereunder shall operate as a waiver of such right or any other right.

      8.     Usury Savings Clause. The Company and Holder intend to comply at all times with applicable usury laws. If at any time such laws would render usurious any amounts due under this Note under applicable law, then it is the Company's and Holder's express intention that the Company not be required to pay interest on this Note at a rate in excess of the maximum lawful rate, that the provisions of this Section 7 shall control over all other provisions of this Note which may be in apparent conflict hereunder, that such excess amount shall be immediately credited to the principal balance of this Note, and the provisions hereof shall immediately be reformed and the amounts thereafter decreased, so as to comply with the then applicable usury law, but so as to permit the recovery of the fullest amount otherwise due under this Note.

      9.     Governing Law. This Note is being delivered in and shall be construed in accordance with the laws of the State of New York, without regard to the conflicts of law's provisions thereof.

      10.    Amendment. Any amendment hereto or waiver of any provision hereof may be made only with the written consent of the Company and the Holder. This Note shall inure to the benefit of and bind the successors, permitted assigns, heirs, executors, and administrators of the Company and Holder.

     **Eco-Petroleum Solutions, Inc.,**

**Immunotech Laboratories, Inc.**

By:

    Harry Zhabilov, CEO

Page 3 of 3

GARIBDECL A - 36

**From:** peter aiello <peteraiello29@gmail.com>
**To:** billyvrayjr@yahoo.com <billyvrayjr@yahoo.com>
**Sent:** Sunday, November 15, 2020, 02:28:05 PM EST
**Subject:** Re: Conversion of a portion of my debts

Billy
I wasn't looking for you to get it done right away.
Sorry if you thought I didn't appreciate the situation your in.
Truthfully I know how you are feeling, I can't walk 100 ft without having the sciatica pain.
Tomorrow I have an appointment with an orthopedic surgeon asking for an epidermal
shot. Hope your feeling better in a few days.
Peter

Peter


On Nov 15, 2020, at 8:38 AM, Billy Ray <billyvrayjr@yahoo.com> wrote:


Peter,

You are going to have to wait. It is like you are not hearing me or ignoring my situation.
Harry would need my help and I can't give it right now. Hopefully later this week but it is
worse today.

Billy

Sent from Yahoo Mail on Android

On Sun, Nov 15, 2020 at 5:04 AM, peter aiello
<peteraiello29@gmail.com> wrote:

> Dear Harry/Billy,
> I seemed to make an error in the enclosed email sent.
> As relates to the Cimarron Capital, Ltd combined principal and interest, I mistakenly put
> the total amount as $5800, which should have reflected $6765.
> Based on the $6765 amount owed, that is where I calculated the amount of shares
> would equate to the number as it appears in my email sent is the 1,675,000.
> Hopefully, my emails will be sufficient evidence of my request to the enclosed
> conversion of the portion of the debts owed.
>
> Regards,
> Peter
>
> Sent from my iPad
>
> Begin forwarded message:

**From:** peter aiello <peteraiello29@gmail.com>
**Date:** November 14, 2020 at 9:39:20 AM EST
**To:** Harry Zhabilov <zhabilov@att.net>, billyvrayjr@yahoo.com
**Cc:** Naomi Alzate <naomi.alzate@gmail.com>, Peter Aiello
<peteraiello29@gmail.com>
**Subject: Conversion of a portion of my debts**


Dear Harry/Billy,
This is a request to Enzolytics, Inc., that I desire to convert a portion of my
debts, into common shares of Enzolytics,Inc.
Based, on the Sept.30,2018 Quarterly Filing, Cimarron Capital, Ic. has (2)
outstanding loans, and my other corporation Kona Concepts, Inc has (1)
Loan Agreement.
Following are the (2) Loan Agreements I have decided to convert.

Kona Concepts, Inc. on the above date of the Quarterly Filing shows,
Principal.          Interest.          Total
$25,000            $4,664            $29,664   *Plus (2) year interest @ 8% =
$35,000

Kona Concepts, Inc. $35,000 @ the (50%) discount ($.004) Equates into
 8,775,000

Cimarron Capital,Ltd
Principal.          Interest          Total
$5,000.              $800.            $5800        *Plus (2) year interest @
8% = $6765
Cimarron Capital Ltd. $5,800 @ the (50%) Discount ($.004)  equates Into
 1,675,000

Based on the Terms of both loans, I have the option to convert my debt at
a (50%) discount to the lowest closing bid during the last 10 days.
In the last 10 days, the lowest closing bid  price of Enzolytics (ENZC) was
$.008, which would at a (50%) discount convert at ($.004)

Please send me whatever document, or paperwork you require to
expedite this transaction.
Best Regards,
Peter

* I have calculated the approximate interest that would be accumulated up
to date

Sent from my iPad

**From:** peter aiello <peteraiello29@gmail.com>
**To:** Harry Zhabilov <zhabilov@att.net>; Billy Ray <billyvrayjr@yahoo.com>
**Cc:** "naomialzate@gmail.com" <naomialzate@gmail.com>
**Sent:** Thursday, November 19, 2020, 05:06:11 AM EST
**Subject:** Enzolytics, conversion for Kona Concepts, and Cimmaron

Dear Harry/Billy,
Please disregard prior email sent on Nov.14,2020 requesting conversion of a portion of my debts.
In a conversations with both my attorney, and financial advisor, I have asked my attorney Naomi Alzate to to represent my interest, and send both you a formal submission of my "Notice of Conversion", based on the Terms in both Loan Agreements, as per the discount to the closing price, reflected on OTC Markets as of Nov.12,2020 of $.008.
This is sent to advise you, that I have given Naome Alzate the authorization to act on behalf and interest.
Best Regards,
Peter